UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:09-cr-139 |
| v. ) | |
| ) | |
| ROY RAMSEY ) | *Collier / Lee* |

## REPORT AND RECOMMENDATION

Defendant Roy Ramsey filed a motion to suppress all evidence seized during a traffic stop [Doc. 12]. The Government filed a response in opposition to the motion [Doc. 15]. The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 13].

**I.     Introduction**

Defendant seeks to suppress all evidence resulting from the stop of his automobile on the ground that his Fourth Amendment rights were allegedly violated when his automobile was seized and searched without reasonable suspicion supported by specific, articulable facts. An evidentiary hearing on the motion was held October 9, 2009. The parties' arguments, including all post-hearing pleadings [Doc. 18 & 19], have been carefully reviewed and fully considered. For the reasons set forth herein, I **RECOMMEND** that Defendant's motion to suppress [Doc. 12] be **DENIED**.

**II.    Facts**

At the evidentiary hearing, the Government offered the testimony of the sole witness, Jason Duggan, a four-year veteran officer of the Chattanooga Police Department ("CPD") and canine handler. Officer Duggan testified as follows.

On August 14, 2009, Officer Duggan was contacted around 6:00 a.m. by his CPD supervisor

and told he would be assisting agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in a narcotics investigation that day. Officer Duggan understood that he and his drug-detection dog, Red, would be involved in an investigatory vehicle stop and a possible resulting arrest. Around 7:30 a.m., Officer Duggan received a call from an ATF agent who told him where to position his unmarked patrol car along I-75 to make the stop and gave him identifying information about Defendant's vehicle.

After he was in position on I-75, Officer Duggan was in communications via his cell phone and a secure radio channel with other officers and ATF agents prior to the stop. From these communications, Officer Duggan learned additional information about the target vehicle, a Chevrolet Silverado, and the driver, Defendant. Officer Duggan was instructed to stop the Silverado. Officer Duggan was also told that: (1) Defendant was a suspect in an ongoing, multi-state narcotics investigation, (2) Defendant had been involved in a previous drug buy, (3) the Silverado might contain narcotics, (4) there was a tracking device on the Silverado, (4) Defendant was being followed by ATF agents, and (5) Defendant might attempt to flee so several officers were in position to assist with the stop. Officer Duggan was also advised by an ATF agent that he should attempt to prevent Defendant from making a cell phone call at the time of the stop in order to protect the integrity of the ongoing narcotics investigation.

As the Silverado approached Officer's Duggan's position, and before he initiated the stop, Officer Duggan observed Defendant speeding. Officer Duggan used his radar equipment[1] as Defendant passed his position on I-75 and determined Defendant traveled 60 mph in a 55 mph zone

---

[1] Defendant does not contest that the radar equipment was properly calibrated and functioning.

as Defendant attempted to pass a tractor trailer. As Officer Duggan began to follow Defendant, he also saw Defendant abruptly change lanes at the I-75/I-24 split, causing Defendant's vehicle to come "too close" to another vehicle. Enforcement of traffic laws is one of Officer Duggan's patrol duties.

Officer Duggan activated his blue lights and stopped the Silverado, quickly approached the driver's side of the Silverado, and immediately asked Defendant to get off the telephone and step out of the vehicle. As reflected in the testimony and the recording of the stop,[2] Officer Duggan advised Defendant that he was stopped for speeding. Another CPD officer, William Curvin, quickly joined the stop. At Officer Duggan's request, Officer Curvin began the process of traffic enforcement, such as reviewing Defendant's license and discussing the speeding violation with Defendant. At the same time, and only about two minutes after the stop began, Officer Duggan began the process of deploying Red in a canine sweep of the Silverado. Red alerted to the presence of a drug odor at the driver's door.[3] A search was conducted and cocaine, marijuana, and about $5,000 was found in the Silverado.

During his initial contact with Defendant, Officer Duggan noticed Defendant was more nervous than a typical motorist pulled over for a traffic violation. On cross examination, Officer Duggan agreed a certain amount of nervousness is typical for any traffic stop. At no time was Defendant given a citation for the traffic infractions of speeding or following too closely. Officer Duggan admitted that even if there had been no traffic violation, he was going to stop Defendant.

I **FIND** the testimony of Officer Duggan was not controverted by any evidence and his

---

[2] Government's Exhibit 1 is a DVD containing a visual recording of the stop, with limited audio recording, which was admitted into evidence without objection.

[3] Defendant does not dispute that Red and Officer Duggan are an appropriately trained, certified, and reliable canine-drug-detection team.

3

credibility was not impeached. Therefore, I **FIND** his uncontroverted testimony provides an accurate description of the relevant events at issue.

**III. Analysis**

Defendant seeks to suppress evidence of the cocaine, marijuana, and money found in the Silverado. Defendant initially argued there was no legal basis for the stop and subsequent search of his Silverado, because the claim he was speeding was a false pretense to justify a preplanned stop without reasonable suspicion supported by specific, articulable facts [Doc. 12]. In his post-hearing pleading, however, Defendant appears to abandon any argument that the stop was improper and instead argues the deployment of Red under the circumstances was unconstitutional [Doc. 18]. The Government argues the stop and search were properly supported by probable cause [Doc. 15].

**A. Legal Standards**

A defendant has the burden of establishing a legitimate expectation of privacy to assert a Fourth Amendment right.[4] *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). Stopping a vehicle and detaining its occupant is a seizure – a non-consensual, investigative detention – under the Fourth Amendment. *United States, v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008). If either the initial traffic stop or the scope and duration of the stop is unlawful, then the evidence obtained from that illegality must be excluded as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

The United States Court of Appeals for the Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to

---

[4] Defendant's legitimate expectation of privacy with respect to all contested issues is undisputed.

4

make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). *See also Whren v. United States*, 517 U.S. 806, 810 (1996) (the decision to stop an automobile is reasonable where there is probable cause to believe a traffic violation has occurred); *United States v. Simpson*, 520 F.3d. 531, 541 (6th Cir. 2008) (reasonable suspicion standard for ongoing traffic violation; probable cause standard for completed traffic violation).

### B. The Stop

Officer Duggan's testimony that Defendant was violating applicable traffic laws by speeding and following too closely was not controverted or impeached. I **FIND** the Government has shown Officer Duggan had an objectively justifiable basis for stopping the Silverado as he had probable cause to believe civil traffic violations occurred.

As to Defendant's pre-hearing argument that the stated reason for the initial stop, traffic violations, was a mere pretext designed to obscure that he was impermissibly stopped on a hunch he had contraband in his vehicle, Officer Duggan's investigatory agenda at the time of the stop is legally irrelevant for purposes of suppression. *See e.g., Whren*, 517 U.S. at 813; *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). It is well established the police may lawfully detain a vehicle and conduct a brief stop of its occupants where there is probable cause to believe a traffic violation has occurred, even if the traffic offense is minor and the officer had additional subjective reasons for making the stop. *Whren*, 517 U.S. at 810, 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Canipe*, 569 F.3d. 597, 601 (6th Cir. 2009) (officer's actual motivation for making a stop does not undermine his probable cause to believe a traffic violation occurred); *Blair*, 524 F.3d at 748 (subjective intent of an officer

5

in stopping a vehicle has little to no relevance as long as the necessary probable cause exists); *Ferguson*, 8 F.3d at 391 (if the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop does not violate the Fourth Amendment and it is irrelevant what else the officer knew or suspected about the traffic violator). That law enforcement had already decided to stop the Silverado, or that Officer Duggan was purposefully looking for a reason to lawfully stop Defendant,[5] is simply beside the point because Defendant provided an objectively justifiable basis for the stop by committing civil traffic infractions. Defendant has not cited to any authority that would support a contrary conclusion and, in his post-hearing brief, Defendant appears to concede that Officer Duggan did not violate Defendant's constitutional rights when he stopped Defendant, asked Defendant to step out of and away from the Silverado, or asked Defendant for his license.

C.     **The Detention**

Finding a traffic stop justified and valid at its inception does not end the Fourth Amendment inquiry, because any detention of the Defendant must also be reasonable. Generally, if a detention exceeds its proper scope, then any evidence seized during the illegal detention must be suppressed as fruit of the poisonous tree. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

When a vehicle is lawfully stopped, an officer may request a driver's license and vehicle registration from the driver. *Id.* at 269; *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). The driver

---

[5] Although the Government initially referenced two federal tracking warrants and contended there was reasonable suspicion for stopping the Silverado even without the traffic infractions, at the hearing the Government relied on the traffic violations as support for the stop. Thus, it is not necessary to address whether Officer Duggan also had, in the absence of the traffic infractions, "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

6

may be detained until after the officer has finished verifying his license, checking other records, and issuing a citation, as these acts are within the purpose of the initial stop. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996). It is also reasonable for an officer to ask someone detained during a traffic stop a few questions that are unrelated to the initial reason for the traffic stop. *United States v. Burton*, 334 F.3d 514, 518-19 (6th Cir. 2003). *See also United States v. Ellis*, 497 F.3d 606, 613-14 (6th Cir. 2007) (questions about the occupants' itinerary, reasons for travel and identification were not overly intrusive); *Hill*, 195 F.3d at 268 (officer may ask questions about identity, travel plans and consent during traffic stop).

Without citation to any supporting authority, Defendant contends the search of his Silverado was improper because the use of a drug-detection dog "could not disclose anything relevant to the traffic violations." [Doc. 18]. The crux of Defendant's argument is that, because Officer Duggan never intended to issue citations for the traffic violations, the officers abandoned the lawful traffic enforcement purpose of the stop and improperly deployed Red since nothing occurred *during* the stop that would raise reasonable suspicion of illegal drug activity.

Defendant's first suggestion, that Officer Duggan never intended to write a citation so the traffic enforcement purpose of the stop was immediately abandoned, is irrelevant for suppression purposes because "continuing to detain a motorist does not become unlawful just because the officer has determined in his own mind not to pursue the traffic violation." *United States v. Herbin*, 343 F.3d 807, 810 (6th Cir. 2003) (citing *Ohio v. Robinette*, 519 U.S. 33 (1996)). Thus, neither Officer Duggan's subjective intentions, nor his failure to issue traffic citations, is of any legal consequence.

Defendant's remaining argument, that the officers unlawfully exceeded the lawful traffic

7

enforcement purpose of the initial stop without reasonable suspicion of further criminal activity, fails because the Fourth Amendment does not require probable cause or reasonable suspicion to justify using a drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended. *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). It is only if the deployment of a narcotics-detection dog would "detain the motorist any longer than is reasonably necessary to issue the traffic citation, . . . [that] the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct. *Id.* at 539. *See also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (seizure becomes unlawful "if it is prolonged beyond the time reasonably required to complete [its] mission").

Defendant does not dispute that only a few minutes elapsed between the stop and the alert by Red. Defendant also appears to concede the stop was not prolonged in order to deploy Red by admitting his argument does not turn on the length of the stop [Doc. 18 at 3]. That Red was deployed within a few minutes of the stop is not determinative of whether the detention was constitutional. *Bell*, 555 F.3d at 539. The mere two-minute lapse of time between the stop and the deployment of Red, however, certainly bolsters the undisputed video evidence that Officer Curvin had not completed all traffic enforcement acts at the time of the deployment and alert. Thus, I **FIND** the traffic enforcement purpose of the stop was not concluded during the time Red was deployed and almost immediately alerted, in spite of the officers' investigatory agenda. No evidence indicates Defendant was detained longer than reasonably necessary to complete the purpose of the stop or that the officers extended the duration of the stop to enable the dog sniff to occur. Therefore, I also **FIND** the officers acted with diligence and that Defendant was not detained any longer than necessary for the purpose for which he was initially pulled over – traffic enforcement. *See*, *e.g.*,

8

*United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) ("the duration of the stop was reasonable; the canine sniff was performed within a half hour of the stop"); *Bell*, 555 F.3d at 541 (detention proper where it is no longer than reasonably necessary for officers to complete the purpose of the stop).[6]

Defendant does not directly address whether he was detained any longer than was necessary to issue traffic citations. Defendant instead argues the dog sniff of his Silverado exceeded the scope of a proper traffic stop under the circumstances, because nothing occurred *during* the stop to arouse police suspicion of illegal activity. Defendant's argument fails as a matter of law because courts have repeatedly recognized that a canine sniff by a narcotics-detection dog conducted during a lawful traffic stop does not violate the Fourth Amendment. *See e.g., City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000); *United States v. Place*, 462 U.S. 696, 707 (1983); *United States v. Davis*, 430 F.3d 345, 355 (6th Cir. 2005). Significantly, the Supreme Court has held the use of a well-trained drug-detection dog during a lawful traffic stop does not constitute a search, and therefore does not violate the Fourth Amendment, even where there are no specific and articulable facts to suggest illegal drug activity. *Caballes*, 543 U.S. at 408-09. As the Court explained, there is no legitimate expectation of privacy in the possession of contraband, and since well-trained drug dogs will reveal only the presence of contraband, a drug dog sniff does not invade Fourth Amendment interests. *Id. See also Bell*, 555 F.3d at 539. For this reason, it is irrelevant whether any grounds for reasonable suspicion arose during the traffic stop of Defendant, because no such grounds were

---

[6] Given my finding that the purpose of the stop was not completed, it is not necessary to also determine whether the officers had reasonable suspicion to hold Defendant beyond the time reasonably required to fulfill the purpose of the initial stop for traffic violations based on Officer Duggan's testimony that he had been told some information about Defendant's involvement in drug activity and he had noticed Defendant was more nervous than a typical traffic law violator.

9

necessary to justify the use of Red to detect the presence of contraband.

Accordingly, after considering the totality of the circumstances, I **FIND** the Government has met its burden of showing the Defendant's detention, including the deployment of Red, did not violate the Fourth Amendment because the traffic stop and detention were not unlawful or improperly extended.

**D.     Search**

Although searches must normally be conducted pursuant to a warrant, under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause. *United States v. Ross*, 456 U.S. 798, 823 (1982); *United States v. Pasquarille*, 20 F.3d 682, 690 (6th Cir. 1994). "[I]f probable cause justifies the search of the lawfully stopped vehicle, it justifies the search of every part of the vehicle and the contents that may conceal the object of the search." *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) (citing *Ross*, 456 U.S. at 825); *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991) (If there is probable cause to search a lawfully stopped vehicle, "then that probable cause extends to justify the search of every part of the vehicle and all containers found therein in which contraband could be hidden.").

Defendant does not dispute that Red is trained, certified, and reliable and, therefore, I **FIND** Red's alert provided the necessary probable cause for a search of the Silverado. The use of a drug-detection dog is an accepted investigative technique and, when a properly trained and certified drug-detection dog alerts to an item, the alert alone constitutes probable cause for a search. *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994). Thus, I **FIND** the officers had probable cause for the warrantless search of Defendant's Silverado based upon Red's alert.

10

**IV. Conclusion**

For the reasons stated herein, I **RECOMMEND** that Defendant's motion to suppress [Doc. 12] be **DENIED**.[7]

s/Susan K. Lee  
SUSAN K. LEE  
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within ten days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).